Good morning may it please the court I'm Richard Epstein with Ritzman Marder for Global Client Solutions and Rocky Mountain Bank and Trust. Much has been written in the briefing that is candidly quite off point. This matter is a matter of very limited focus as to a very single factual issue that is entitled to de novo review by this court. Was there or was there not an agreement between Rocky Mountain Bank and Trust and Global Client Solutions on the one hand and the plaintiffs in the case below the Carlsons and the Poppins that called for arbitration of the disputes that were filed in the Eastern District of Washington. The question is really one of interpretation of the party's words actions and conduct. It is a candidly a matter of state law as to whether a contract exists under these circumstances. There is no question that the relationship between the Carlsons and the Poppins on the one hand and Rocky Mountain Bank and Trust and Global Client Solutions is contractual in nature. The question is not whether there is a contract it's what was that setting involved what has been termed I think by the Mortensen court as a layered contract. A contract where various leafs are piled one upon the other based upon the way the parties entered into the contractual relationship. In this instance of course the district judges decided that there was no contract calling the contained in arbitration provision and he did that by limiting the scope of his analysis. He did not look for instance or did not consider the importance of documentation that was provided to each of the other contracting parties prior to or contemporaneously with the commencement of performance of the contractual relationship. In this instance quite simply each of the couples the Carlsons and the Poppins entered into a agreement with another party entirely. That other party as part of the contract documents that they called upon the Carlsons and the Poppins to sign included an account application. An application whereby each of these folks asked Rocky Mountain Bank and Trust and its agent Global Client Solutions to open a bank account for them to use in connection with this other contractual relationship. One that Rocky Mountain Bank and Trust and Global Client Solutions were not a party to. In each instance the account application, an application not the entire form of the contract, not a document that even called for execution by either Rocky Mountain Bank and Trust or Global, but that application was filled out and signed by each couple as part of their application and enrollment process with this other contracting party. And importantly as reflected by the declaration of each of the plaintiffs below, that application was then submitted to the third party. Not to Global, not to Rocky Mountain, but to the third party that transmitted it to Global and Rocky Mountain. So there was this multi-step process where the application was first made and then and only then did Global evaluate and Rocky Mountain evaluate the application, accept the application, send out the so-called welcome letter which was accompanied by additional controlling terms of the client or contractual account relationship. Both couples admitted, they acknowledged, there's no dispute in the record, that they received the welcome letter and the account agreement that was attached to the welcome letter. So there's no dispute that at a point in time, generally within two weeks to about three and a half weeks, following the submission of the application, each of the other contracting parties had in their possession the full terms of the contract. May I stop you there? Now we're to the point where everybody agrees all these papers are where they are in the application, etc. What would have happened if they had decided not to use the accounts at that point? What would have happened with the third party and their undertaking with the third party? Had they incurred other fees already? They would be out? There were no fees that had been collected or paid prior to the time that Global, as a third-party ACH processor, made the first withdrawal from the account. And in one instance, that followed the receipt of the additional papers. In the other instance, it was roughly contemporaneously with it. So whether the question that you ask is one that the record does not answer, and that is, would the relationship with that third party have gone forward? The record isn't clear on that. It could have. I don't see any reason. We've read and their agreements, the third-party agreements, one with Freedom, Debt Relief, one with Silver Bay, are part of the record. And in each one of them, it appears that there is the possibility they could still go forward without the establishment of this dedicated account. It would require some other mechanism to be put into place where the money would be funded to ultimately be used for the resolution process. But the record doesn't answer that question. I take it then, your point is that once the papers arrived following the account application, that they still had the option not to proceed vis-a-vis Global? Absolutely. They absolutely have the right to say, no, I've looked at these terms. I don't agree with them, or I don't wish to proceed on this basis. No different, you know, than the court's analysis in Citibank v. McLeod, the Washington Appellate Court case. Discover Bank v. Ray, the Washington Appellate Court case. The Washington Supreme Court case in M.A. Mortensen, which dealt with a shrink-wrap agreement, which operates in a similar fashion, at least it did in that particular case, because there was a purchase order that preceded the delivery of the software. And, you know, candidly, the Yakima County case, the Washington Supreme Court case, dealing with the sewer contracts. And then one where there was here, here's a document, you need to sign it, you didn't read it. But really the most analogous are the two credit card cases, Citibank and Discover Bank, where basically the contractual relationship is designed in pretty much the same fashion. You send in an application, or you do it online, and ultimately, you know, once the card, the credit card company accepts your it. So it's very analogous from the process standpoint, those two cases. In that case, of course, the onus was on the credit card holder, the consumer, to decide whether or not to use the credit card. Once they took advantage of the credit card, they were deemed to have accepted the terms. Performance, in other words, is signifying assent. That's the lesson, the theme of all of those cases. In the... Do you want to set time for rebuttal? I do, yes. Thank you. Good morning, Your Honor. Daryl Scott, Scott Law Group, the privilege of representatives in a Washington consumer class action. It's a great privilege to have 10 minutes of your time. I'll be brief. I want to address three topics. First, the scope of review, or of the review. Second, the correctness of the court's underlying reasons. And third, independent sufficient reasons for affirming the court's order, which is in order, denying arbitration. Scope of review. This is an appeal of an order denying class certification, or denying arbitration. Jurisdiction is based on 9 U.S.C. section 16 A.1.B., if I'm correct, which gives jurisdiction over the order. This order happens to be based on a particular rationale, but the court's jurisdiction is over any rationale that was submitted to the court, argued, and presented to the court that would sustain the court's order. And this court, for purposes of judicial economy, can prudently only address the threshold issue as to whether a contract for arbitration came into being, and for that reason had no reason or occasion to address other reasons which powerfully demonstrate that the court's order is correct. What was the court's reasoning by second point? The court determined that there was no agreement to arbitrate. Whether there is agreement is a question of fact. The court entered factual findings that there was no agreement. The standard of review, therefore, is whether that court's factual finding is clear error. What was the court's reasoning? The Carlsons and the Poppins were given a variety of integrated documents, which included a debt relief settlement agreement and an application for a, quote, special purpose account. The special purpose account was a contract for arbitration provisions. At that point of contracting, not application, in which the Carlsons and Poppins agreed to open an account, authorized Global to take money out of their bank, agreed to fees to be taken, and agreed to be encumbered by several thousand dollars in fees owing by Global. By virtue of their signature of those documents at that time, fees owing to the debt settlement company, they entered into contracts with Global and with Freedom Debt Relief, and there was no arbitration provision. Okay, would you just be clear which piece of paper? Is it the application you're talking about at that stage vis-a-vis Global that your client signed? Yes, and simultaneously the debt settlement agreement. Correct. Which created an integrated agreement as anticipated between Global and the debt settlement company, who had their own separate contract together, and yet obligated my clients to pay thousands of dollars in fees to the debt settlement company and pay fees to Global. Opposing counsel is categorically wrong in the factual representation he just made. Before the arbitration agreement arrived on my client's doorstep, Global had transferred money out of their account and had dispersed those spoils between Global and the debt settlement companies. Before the arbitration agreement even arose, even appeared, moreover, the obligation to the debt settlement company was owing in full by virtue of their having signed those documents, there was no backing out. That is why the court recently... What document on that point did they sign that obligated them vis-a-vis Global? The account application agreement agrees to a whole series of fees that may be taken, and money was transferred and those fees were taken. So you're saying it's the application at that point? Yes. But in additionally, it's the debt settlement agreement. These are not accident, this is not an accidental relationship here. Global is the hub of a wheel handling accounts of upwards of 600 debt settlement companies, roughly 600,000 consumer accounts. This is not an accident. It is an integrated debt settlement program involving those two entities acting in cooperation with one another. So the court's reasoning is not clear error. In fact, I think the court's reasoning is simply correct. This is not a case like Citibank or Discovery Card. This is not a situation where the initial agreement provided for new or additional or different terms to be coming later, as was the case in all those other commercially appropriate situations. We were hostage at the point we signed those documents and sent them to the debt settlement company. There was no backing out, and for that reason, the fact that the arbitration agreement appeared later in the mail does not demonstrate conduct on the part of the consumer to accept that agreement. The relationship is entirely automatic, and the consumer's blind to it. Money is being transferred out of a Washington account into an account in Colorado. Fees are being split up, and there is no activity by the consumer, whatever, as would be the case if you had a credit card, that you actively go out and use. Alternative basis. I mean, maybe the use of the word application may be a little misleading here in the sense that they do sign an authorization to debit their bank account in that document, correct? That is correct, and they authorize the sharing of information, and they agree to certain fees, and all that happens like that without regard for whether anything else comes in. There is nothing else that needs to come in the mail for this program to operate, and in fact, it operated well before anything came in the mail. Additional basis. This arbitration provision is clearly substantively and precisionally unconscionable. Under Washington substantive law, anything that substantially infringes on a consumer's right to pursue a consumer protection claim on behalf of the community as a whole through class proceedings is unenforceable. This arbitration provision uproots Washington law and says you're governed by Colorado law without regard for what courts say about choice of law rules. It obliterates the consumer's right to pursue a consumer protection claim, and in particular, under Washington's debt adjuster statute 18.28, that renders this agreement unenforceable under the Washington Supreme Court opinion of Dix. It compels arbitration of people who are known destitute people who are engaged in this contract because they are on the verge of bankruptcy, obligates them to go to Colorado to arbitrate between, for an arbitrator of global's own choosing without any benefit of Washington law, and under Stoltz-Nielsen with an inability to pursue it as a class action because the That renders it unenforceable, a point the court need not treat because there was in the first instance no contract. Lastly, they rescinded the contract. By the way, they rescinded the arbitration agreement with the FDIC hot on the heels of Rocky Mountain Bank and Trust. Global takes the funds and Oklahoma and sends out a new letter that says, by the way, come to Oklahoma. Thank you for your time, Your Honor. Thank you. I think you have some rebuttal time left. Thank you, Your Honors. We'll work somewhere somewhat in reverse. The alternative grounds that are cited, number one, are beyond the scope of the order that was entered, and secondly, it invokes an issue that I think the court cannot rule on as a matter of law, given the pendency before the Supreme Court of the United States of Concepcion versus AT&T Mobility. The issue of FAA preemption, state laws invalidating arbitration provisions, is squarely before them right now, and that may very well negate the Washington law that counsel's pointing to. Secondly- That doesn't mean we can't go ahead. We may be ill-advised. Well, you certainly can, but I think, obviously, given that it was not an issue that was even addressed by the trial court, and unconscionability is an intensely factual determination, the trial court should be at least given the opportunity to make those findings himself, rather than for them to come during an appellate proceeding. Secondly, counsel's also referred to matters beyond the arbitration provision, matters that, at least if I heard him correctly, he's saying the agreement itself is fraught or subject to invalidity. Well, under Buckeye, if the agreement, the entire agreement is being challenged as invalid, that's a matter for the arbitrator. Only the arbitration provision is separable, not other provisions which are being challenged, so that would necessitate going to arbitration, not going to arbitration. Third, the agreement, the application, refers specifically to the account agreement, albeit it was not attached, but it refers specifically to it, so it's not as if there was no notice to the customers here that there were other terms, and those other terms were, in fact, delivered. And I made the point very clearly that in one instance, the disbursements occurred only after the welcome letter arrived, and in the other, it was contemporaneously, it was right at around the same time. So I've not at all misstated what the record shows in this particular case. Finally, at page 17 of our brief, we kind of characterize what this process is really all about. The application was done by, through a third party, given to that third party, who then transmitted it to Global. Global had no connection with its proposed account holder at that time. We look at that in contractual terms, and cite it, and argue this at page 17 of our brief, as an offer. Global had to evaluate the offer, make sure that the information was correct, was suitable for them to open up an account, and they accepted the offer by sending the welcome letter and the account agreement. Offered acceptance is the most basic contractual concept, and once that occurred, there was a contract. The contract terms were then, as specified, you know, or as analogized to the bank card cases, the credit card cases, formed based upon all of the circumstances that were then existing. And remember, each of these parties had the right to terminate this agreement at any time they wanted. And in fact, both ultimately did terminate the agreement. So they could have terminated before, during, or as they did at the end of the term, freely, without any resistance by Global whatsoever. So the control was with the customers, not with Global, not mischaracterized here. Thank you. Thank you. Thank you both for argument this morning. The case of Carlson versus Global Client Solutions is submitted.
judges: McKeown, Fisher, Gould